*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DONNA FARY, | : | |
| Plaintiff, | : | Civil Action No. 19-5390 (FLW) |
| v. | : | **OPINION** |
| ANDREW SAUL, Commissioner of Social Security, | : | |
| Defendant. | : | |

**WOLFSON, Chief Judge:**

Donna Fary ("Fary" or "Plaintiff") appeals from the final decision of the Commissioner of Social Security, Andrew Saul ("Defendant")[1], denying Plaintiff disability benefits under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") opinion was based on substantial evidence and, accordingly, affirms the decision.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on January 15, 1954, making her 59 years old at her alleged disability onset date. AR 126. She has past relevant work in food sales, as a stores laborer, and as a cashier. AR 21. Plaintiff seeks disability benefits due to high blood pressure, depression, anxiety, vertigo, neck and shoulder pain, thyroid, and stomach issues. AR 26, 140.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

Plaintiff protectively filed an application for Social Security Benefits on October 28, 2013, alleging a disability onset date beginning May 12, 2013. AR 119-125. The claim was initially denied on March 14, 2014, and upon reconsideration on October 17, 2014. AR 139, 154. After requesting a hearing before an ALJ, Plaintiff appeared at a video hearing before the Honorable John Pope, ALJ, on August 7, 2017. AR 36. On February 28, 2018, the ALJ issued an unfavorable decision. AR 12-30. Thereafter, Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council on May 2, 2018. AR 250. On December 13, 2018, the ALJ's decision became final, when the Appeals Council denied Plaintiff's request. AR 1.

### A. Medical Evidence

Plaintiff has a history of neck and shoulder pain. According to notes from a treating physician, Jeanne Tomaino-Esposito, MD, Plaintiff had surgery on her shoulder from a work-related injury in 2012 when a box fell on her head. AR 381. A CT scan of Plaintiff's cervical spine in May 2012 showed no evidence of fracture and only mild multilevel degenerative changes without significant central canal or neural foraminal narrowing. AR 362-63. In 2013, Plaintiff was not experiencing any muscle weakness or aches or pains, and her musculoskeletal findings were normal overall. AR 390, 396, 402, 441, 445, 448, 452.

On July 8, 2014, x-rays of both of Plaintiff's shoulders were normal. AR 515. In her right shoulder, the acromioclavicular joint was normal, her clavicle was intact, the humeral head was smooth and intact, there was no soft tissue calcification and no fractures. AR 515. The same findings were present in her left shoulder, and it was further noted that there were no osteoarthritic changes. AR 515.

Plaintiff saw Deepinder Arora, M.D., for a consultative evaluation on August 7, 2014. AR 517-23. Plaintiff complained of pain in her neck and shoulders that was getting worse, stating that the pain disrupts her sleep and prevents her from lifting things. AR 517. Dr. Arora

found some restriction of motion to Plaintiff's cervical spine, though there was no swelling, stiffness, weakness, arthritis, or myositis. AR 518, 519. She further observed that "[o]n the shoulders, there is no restriction to range of motion" and there was "[n]o restriction to anterior and lateral flexion of the spine." AR 519. Her power and strength was "5/5 all over and grip strength 5/5 in the hands bilaterally." AR 519. Vibration, position, and touch sensation were all intact, and Plaintiff could walk on her toes and on her heels and tandem walk with a normal gait and station. AR 519.

On September 11, 2014, consulting orthopedist A.M. Pirone, M.D., reviewed Plaintiff's medical records. While noting Plaintiff's alleged chronic neck and shoulder pain, Dr. Pirone ultimately found her "comorbidities . . . not limiting," pointing to "minimal findings on current physical examination, and x-rays of both shoulders [being] normal." AR 524. He also highlighted that an imaging study of Plaintiff's cervical spine showed degenerative disc disease with no significant central canal or neuroforaminal stenosis. AR 524. He concluded that Plaintiff's "constellation of physical impairments should be considered not severe." AR 524.

Plaintiff was treated for hypertension, hypothyroidism, and vertigo by Dr. Tomaino-Esposito, M.D., mostly prior to her alleged onset date in 2012 and 2013. AR 373-404. There is little detail regarding either Plaintiff's hypothyroidism and vertigo, however.

As for Plaintiff's hypertension, on May 30, 2013, prior to the alleged onset date, Plaintiff was driving and developed dizziness due to elevated blood pressure. AR 441. She stated that she had not taken her blood pressure medication the previous day. AR 441. On examination, she had no dizziness and reported feeling better. AR 441. In a follow-up with Dr. Jeffrey Schlogl, Plaintiff reported that she continued to have bouts of dizziness but refused to be admitted to the hospital and left against Dr. Schlogl's advice. AR 445-47.

3

Plaintiff began treating at Barnabas Health in October 2013, and saw a licensed clinical social worker weekly and a psychiatrist once a month for medication checks. AR 467, 469. Plaintiff reported that her chief complaint was that she had "been feeling anxious." AR 467. She reported a series of family issues, including worrying about her son, who suffered from severe anxiety, and a "conflictive" relationship with her husband. AR 467, 469. She stated that she experienced panic attacks, though she told her psychiatrist that they were relieved by medications and that therapy was helping. AR 473. Plaintiff reported similar issues through her last reported session in May 2014. AR 513.

On February 23, 2014, Plaintiff underwent a mental status evaluation with consultative examiner Christopher Williamson, Psy.D. AR 495-97. She reported ongoing issues of anxiety, nervousness, and jitteriness, and, resultantly, frequent panic attacks including heart palpitations, difficulty breathing, and chest tightness. AR 495. On examination, Dr. Williamson noted that Plaintiff was pleasant and cooperative, and arrived at the appointment on time, though her overall mood was depressed and anxious. AR 496. There was no evidence of a formal thought disorder and no noted compulsions of thinking and/or behavior. AR 496. Plaintiff's speech was clear, coherent, and goal directed. AR 496. She could repeat up to six digits forwards and 4 digits backwards. AR 496. She was able to accurately complete serial sevens, subtracting 7 from 100 in reverse order. AR 496). Her abstract reasoning was intact, and she could complete simple mathematical calculations of addition and subtraction. AR 496. Her overall fund of knowledge was in the average range, and she was well oriented to person, place, and time as well as recent current events. AR 496. Dr. Williamson diagnosed Plaintiff with panic disorder and recurrent depression, AR 496, and concluded that Plaintiff was competent to handle her own funds. AR

4

497. He described her overall prognosis as guarded due to the chronic nature of her symptoms. AR 497.

In March 2014 and October 2014, the state agency physician consultants reviewed the relevant medical evidence and opined that Plaintiff was not disabled, and in fact, could perform a range of work in the national economy. AR 126-154.

**B. Plaintiff's Testimony Before ALJ**

Plaintiff, represented by counsel, testified at the hearing before ALJ Pope on August 7, 2017. Plaintiff testified that she had seen doctors for shoulder pain, and that she had burning pain in both shoulders and it was hard for her to lift things. AR 47. Plaintiff stated that, on a typical day, she woke up between 5 a.m. and 9 a.m., after sleeping on the recliner due to her pain, and would then sit at the table for a few hours after taking her medications. AR 52. She stated that she would then normally do chores, like vacuuming, washing the floor, and cleaning the bathroom. AR 52. She also enjoys watching television and playing games on her tablet. AR 53. Plaintiff testified that she often experienced panic attacks, during which she would feel dizzy, nauseous, and has chest pains. AR 56. She stated that she could not go out by herself and that her sister-in-law or her son accompanied her to the grocery store. AR 64. Plaintiff, however, also testified that she walked on her own to her various doctor appointments. AR 64.

An impartial vocational expert ("VE") also testified at the hearing. AR 70-75. When presented with a hypothetical involving an individual aged 59 to 63, educated at the tenth grade level with the same past work as Plaintiff, and limited to only simple, routine tasks involving no contact with the public and only occasional contact with coworkers and supervisors, the VE initially stated that past relevant work was not available, but upon an inaudible clarifying question, opined, "The store's laborer. I'm sorry, the store's laborer. AR 72. The ALJ repeated, "Can do store's laborer. All right," and then added exertional and postural limitations to the

5

hypothetical, whereupon the VE affirmed that the hypothetical individual could still perform the work of store's laborer. AR 72. The VE further opined that the hypothetical individual with all of these limitations could do the job of box bender, mold filler, and hand packager. AR 72-73. The VE also stated that an individual could miss no more than one normally scheduled working day per month and would need to be on task 86% of the time. AR 73-74.

### C. ALJ's Decision

ALJ Pope issued his decision on February 28, 2018. AR 15-30. At step one of the Commissioner's five-step sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant period. AR 18. At step two, the ALJ identified Plaintiff's severe impairments as depression and anxiety, but found that all of Plaintiff's alleged physical impairments were non-severe. AR 18-19. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. part 404, subpart P, app. 1. AR 19-20. The ALJ then explained that Plaintiff retained the residual functional capacity ("RFC") to perform a to perform a full range of work at all exertional levels but with the following non-exertional limitations: simple, routine tasks, no contact with the public, and only occasional contact with coworkers and supervisors AR 20-21. At step four, the ALJ concluded that Plaintiff, through the date of last insured, was able to return to her past relevant work as a stores laborer, and, accordingly, was not disabled within the meaning of the Act. AR 25.

## II. <u>STANDARD OF REVIEW</u>

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see*

6

*Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for

8

purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id*.

### III. <u>DISCUSSION</u>

Plaintiff contests three aspects of the ALJ's decision. She argues that 1) the ALJ erred in failing to consider her non-severe shoulder and spine impairments in the RFC assessment, 2) the ALJ did not adequately address Plaintiff's moderate limitations in maintaining pace in the

9

hypothetical question to the VE and in the RFC assessment, and 3) the ALJ's inaudible statement to the VE makes it impossible to determine whether the decision was supported by substantial evidence. I will consider each of these arguments in turn.

**A. The ALJ's RFC Assessment of Plaintiff's Non-Severe Physical Impairments**

In his RFC determination, the ALJ stated that Plaintiff had the ability to perform a full range of work at all exertional levels but with the following non-exertional limitations: simple, routine tasks, no contact with the public, and only occasional contact with coworkers and supervisors. AR 20-21. Plaintiff argues that the ALJ erred by failing to consider her non-severe shoulder and spine impairments in this assessment.

"Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see* 20 C.F.R. § 404.1545(a). The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546; *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). "[I]n making a residual functional capacity determination, the ALJ must consider all evidence before him," and, although the ALJ may weigh the credibility of the evidence, he must "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121; *see Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. The ALJ must consider all relevant evidence when determining an individual's RFC, *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir.

2001), and a finding of non-severity "does not obviate the need for a separate analysis of how Plaintiff's impairment affects her RFC." *Soboleski v. Comm'r of Soc. Sec.*, No. 14–3156, 2015 WL 6175904, at *2 (D.N.J. Oct. 20, 2015). "Where the ALJ's findings of fact are supported by substantial evidence, [district courts] are bound by those findings, even if [the courts] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3rd Cir. 2012) (internal quotation marks and citation omitted).

Plaintiff contends that the ALJ erred by failing to consider Plaintiff's spine and shoulder impairments, which the ALJ did not find to be severe, in the RFC assessment. This argument is belied by examining the ALJ's decision, however. As an initial matter, at step two of the sequential evaluation process, the ALJ engaged in an in depth-discussion of the medical evidence regarding Plaintiff's alleged shoulder and spine impairments, and reasonably found them not to be severe. For instance, the ALJ correctly noted that the medical evidence in the file "consistently shows normal testing for the claimant's physical conditions, particularly her back and musculoskeletal examinations," and that a CT scan of Plaintiff cervical spine showed no evidence of a cervical spine fracture, minimal interior subluxation of C3 on C4, and mild multilevel degenerative changes without significant central canal or neural foraminal narrowing. He further noted that x-rays of Plaintiff's shoulders were normal. Next, even after finding these alleged impairments to be non-severe, the ALJ did not, as Plaintiff contends, fail to consider them in formulating his RFC assessment. Rather, the ALJ, again, noted the relevant medical evidence regarding Plaintiff's alleged shoulder and spine impairments, but found that, as a whole, it did not indicate significant physical limitations. In addition, the ALJ pointed to Plaintiff's own testimony, in which she estimated that she could lift eight pounds, and, in an eight-hour day, she estimated she could walk for one hour, stand for one hour, and sit for four hours. AR 23. As a result, the ALJ reasonably found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence," and, accordingly, did not include such physical limitations in the RFC assessment. AR 23.

Thus, the RFC assessment at step four was supported by substantial evidence.

**B. Hypothetical Question to VE Regarding Pace Limitations**

Plaintiff next argues that the ALJ erred by failing to incorporate his step three findings regarding pace into the RFC and his hypothetical question to the VE. The Third Circuit has ruled that "an ALJ's hypothetical must include all of a claimant's impairments." *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004). However, where an ALJ does not include an alleged impairment or limitation in his or her RFC determination, the ALJ need not pose that alleged impairment or limitation to the vocational expert. *See Schmits v. Astrue*, 386 F. App'x 71, 76 (3d Cir. 2010) ("Because that limitation is not in [the claimant's] RFC, the ALJ did not need to consider it at Step Five" in posing a hypothetical to a vocational expert); *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 287 (3d Cir. 2006) (finding that the ALJ did not err in failing to include in his hypothetical questions to the vocational expert "specific reference[s] to [the claimant's] functional loss, mental limitations, and subjective complaints of pain and fatigue," where the ALJ had already discredited those alleged impairments, excluding them from his RFC determination); *Russo v. Comm'r of Soc. Sec.*, No.13–06918, 2014 WL 6991987, at *11 (D.N.J. Dec. 10, 2014) (observing that where "an ALJ has appropriately rejected a limitation, that limitation need not be conveyed to the vocational expert.").

Here, the ALJ, at step three, found that Plaintiff had "moderate" limitations in maintaining concentration, persistence and pace. He noted that while Plaintiff reported having issues in this area, "she was able to perform serial 7s, calculate simple addition and subtraction equations, and recall three out of three common objects at five and ten-minute intervals." AR 20. Plaintiff takes issue with the ALJ, then, failing to include any limitations regarding Plaintiff's

pace in his questions to the VE, and consequently, the RFC assessment. The ALJ was not required to do so, however. Indeed, in *Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014), the Third Circuit rejected an identical argument for reasons that apply equally here. There, the ALJ found the plaintiff had moderate limitations in concentration, persistence, and pace, but did not include any such limitations in the hypothetical question to the VE or in the RFC. In finding that the ALJ's hypothetical question and RFC were adequate, the court noted that "evidence [the plaintiff] produced on mental impairments was generally very thin, particularly on disabling limits in persistence or pace," therefore, "giv[ing] us no compelling reason why these should have been spelled out in detail in the hypothetical." *Id.* at 169. Accordingly, "the ALJ's residual functional capacity finding was accurate, comprehensive and supported by substantial evidence," and plaintiff's "insistence that the ALJ's hypothetical should have included a specific statement about impairments on concentration, persistence and pace is not persuasive." *Id.* The same is true here. Plaintiff has presented minimal evidence that any limitations on pace were disabling, relying almost exclusively on Plaintiff's own testimony. However, as in *Holley* and as noted by the ALJ, the actual medical evidence supporting any such limitation was threadbare. Therefore, the ALJ did not err by not including a limitation on pace in the question to the VE or in the RFC.

### C. Audibility of Transcript

Finally, Plaintiff argues for remand because a portion of the ALJ's hypothetical to the VE was inaudible. When the ALJ presented a hypothetical for an individual aged 59 to 63, with a tenth grade education, same past work as the Plaintiff, limited to simple, routine tasks with no public contact and only occasional contact with coworkers and supervisors, the VE initially testified that no past work was relevant. AR 72. After an "inaudible" question from the ALJ, the VE immediately clarified, "The store's laborer. I'm sorry, the store's laborer." AR 72. The ALJ

13

repeated, "Can do store's laborer. All right". AR 72. After another hypothetical further limiting an individual to lifting/carrying 25 pounds occasionally and 20 pounds frequently, with additional postural limitations and the same nonexertional limitations, the VE reiterated that such an individual could perform the store's laborer job. AR 72.

The "mere fact that there [are] 'inaudibles' in the transcript [does] not make it fatally flawed to require remand." *Drejka v. Comm'r of Soc. Sec.*, 61 F. App'x 778, 784 (3d Cir. 2003). Rather, inaudibles are "immaterial to the ALJ's finding that plaintiff was not disabled under the regulations," unless Plaintiff can demonstrate prejudice. *Id.* at 783-84; *see also O'Neill v. Comm'r of Soc. Sec.*, No. 18-0698, 2019 WL 413539, at *6 (D.N.J. Jan. 31, 2019) ("Courts throughout the country have rejected such . . . argument when, as is the case here, Plaintiff has not shown prejudice") (citing *Mireles ex rel. S.M.M. v. Comm'r of Soc. Sec.*, No. 13-cv-699, 2014 WL 4854426, at *5–6 (W.D. Mich. Sept. 29, 2014) (rejecting argument that illegible portions of the administrative hearing transcript could represent significant and relevant testimony of importance to the determination of the merits because plaintiff did not show any prejudice resulting from the portion of the testimony cited in his brief); *Williams v. Barnhart*, 289 F.3d 556, 557–58 (8th Cir. 2002) ("Absent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible portions of the record.")).

In the present matter, Plaintiff has not shown any prejudice based on this one missing "inaudible" clarifying question to the VE. Indeed, after the inaudible, the VE continually affirmed that Plaintiff could perform the stores laborer job, even after the ALJ added additional exertional limitations. Moreover, Plaintiff's counsel did not once object to the ALJ's line of

14

questioning. Thus, without any indication that the inaudible portion of the transcript prejudiced Plaintiff, remand is inappropriate.

## IV. CONCLUSION

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed.


Dated: March 27, 2020　　　　　　　　　　　　　/s/ Freda L. Wolfson
　　　　　　　　　　　　　　　　　　　　　　　　Hon. Freda L. Wolfson
　　　　　　　　　　　　　　　　　　　　　　　　United States Chief District Judge